IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| ARTIS L. PARKER, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 19–CV–00101–JPG |
| ALLSTATE INDEMNITY COMPANY, | |
| Defendant. | |

**MEMORANDUM & ORDER**

**I.  INTRODUCTION**

Plaintiff Artis L. Parker brought this insurance dispute against Defendant Allstate Indemnity Company after a fire burned down his home and Defendant denied coverage. Plaintiff filed a Motion for Partial Summary Judgment, (Pl.'s Mot. for Partial Summ. J., ECF No. 28), and Defendant filed a Cross Motion for Summary Judgment, (Def.'s Cross Mot. for Summ. J., ECF No. 30). For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is **GRANTED** with respect to Count 1 and **DENIED** with respect to Count 2, Defendant's Cross Motion for Summary Judgment is **GRANTED** with respect to Count 2 and **DENIED** with respect to Count 1, and Plaintiff's Motion to Strike is **DENIED AS MOOT**.

**II.  PROCEDURAL & FACTUAL HISTORY**

In 2004, Plaintiff moved into a single-family home in Shiloh, Illinois ("the insured property"). (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts 1, ECF No. 29–1). Defendant insured the property, (id.), and the policy included fire coverage, (Policy Endorsement AU277–2 1, ECF No. 30–3). Plaintiff initially lived in the home with his wife and three children. (Pl.'s Dep. 18, ECF No. 30–3).

In 2006, Plaintiff obtained a position with the United States Department of Veterans Affairs. (Id. at 22). As a condition of his employment, Plaintiff was required to relocate to various

cities across the United States. (Id.). Plaintiff and his family lived in the insured property until 2014, when Plaintiff relocated to Indianapolis, Indiana. (Id. at 22–23). Plaintiff was accompanied by his wife, son, and one of his daughters; his other daughter remained at the insured property. (Id. at 23). Plaintiff then relocated to Carmel, Indiana in 2015, where he currently resides. (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts 5).

In 2016, Plaintiff's son returned to the insured property. (Pl.'s Dep. 23). Plaintiff's daughter moved out of the insured property the following year, leaving only Plaintiff's son in the home. (Id.). Plaintiff's son carries criminal convictions. (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts 7).

Plaintiff and his wife returned to the insured property "on a regular basis, usually monthly for a weekend but sometimes for longer periods of time." (Id.). Plaintiff continued making improvements on the insured property. (Id. at 24). He also continued paying for utilities, (id.), and he maintained the insurance policy with Defendant, (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts 2).

In 2018, the insured property burnt down. (Id. at 1). Plaintiff filed a claim with Defendant the next day. (Id. at 10). Defendant retained a contractor to investigate the cause of the fire and ultimately classified it as "undetermined." (Id. at 2). Nevertheless, Defendant denied coverage for two reasons. (Id. at 11). First, Defendant argued that the insurance contract required Plaintiff to notify Defendant when he moved out of the home. (Id.) His failure to do so, it argued, excluded coverage for the loss. (Id.) The relevant policy provision states as follows:

> In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

(Allstate Deluxe Plus Homeowners Policy 3, ECF No. 30–3) (emphasis in original) [hereinafter "The Policy"].

Defendant also denied coverage on the grounds that the presence of Plaintiff's son alone in the home constituted an increased hazard by virtue of his criminal record. (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts 11). The relevant policy provision states as follows:

> **We** do not cover loss to the property . . . caused by . . . [a]ny substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

(The Policy 6) (emphasis in original).

In 2019, Plaintiff filed suit against Defendant in this Court alleging breach of contract and seeking relief under § 155 of the Illinois Insurance Code for vexatious and unreasonable refusal to pay. (Compl. 2–3, ECF No. 1). Plaintiff filed a Motion for Partial Summary Judgment, (Pl.'s Mot. for Partial Summ. J., ECF No. 28), and Defendant filed a Cross Motion for Summary Judgment, (Def.'s Cross Mot. for Summ. J., ECF No. 30).

**III. LAW & ANALYSIS**

Plaintiff is entitled to recover from Defendant the amount of the loss payable under the insurance contract. Defendant's refusal to provide coverage based on Plaintiff's purported breach lacks support in the policy: It does not state that *any* breach (absent fraud or misrepresentation) permits Defendant to retroactively cancel the policy without notice and avoid coverage. Nor does Defendant adequately allege that the presence of Plaintiff's son in the home caused the fire. However, Defendant's refusal to pay was not vexatious and unreasonable under § 155 of Illinois Insurance Code.

**A. Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Cross-motions for summary judgment are examined under the usual Rule 56 standards. See Blow v. Bijora, Inc., 855 F.3d 793, 797 (7th Cir. 2017). Summary judgment is often appropriate in cases where the dispute is primarily legal, rather than factual in nature. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

### B. Jurisdiction & Choice of Law

Federal courts have original jurisdiction in matters where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332. Here, Plaintiff is a citizen of Indiana, and Defendant is a citizen of Illinois. (Compl. 1). Plaintiff also alleges that the amount in controversy exceeds the statutory minimum. (Id.). Accordingly, this Court has jurisdiction over this case based on diversity of citizenship.

Federal courts sitting in diversity jurisdiction apply state law to "substantive" issues, whether statutory, case law, or common law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). "The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." Wood v. Mid-Valley, Inc., 942 F.2d 425, 426–27 (7th Cir. 1991). In this case, the parties agree that Illinois law applies to Plaintiff's claims. Absent a disagreement, the Court will apply Illinois law.

### A. Breach of Contract

The object of the interpretation of an insurance policy is to determine the mutual understanding of the parties so that it may be given effect according to their real purpose and

intention. McCarthy v. Pac. Mut. Life Ins. Co., 178 Ill. App. 502, 503 (1913). The language used is given its usual and ordinary meaning. Id. Where there is doubt, the language must be construed in favor of the insured. Id.; FDIC v. Am. Cas. Co. of Reading, 998 F.2d 404, 408 (7th Cir. 1993) (applying Illinois law). This principle is applied "most rigorously" when the ambiguity purports to limit liability to exclude insurance coverage. Playboy Enters., Inc. v. St. Paul Fire & Marine Ins. Co.,769 F.2d 425, 428 (7th Cir. 1985) (applying Illinois law).

Plaintiff contends that Defendant violated the terms of the insurance policy when Defendant denied his claim for loss after the fire that burned down his home. In denying Plaintiff's claim, Defendant reasoned—and argues here—that it was not obligated to make payments on the contract because Plaintiff was in material breach when he failed to inform Defendant that he and his family moved, leaving his son alone in the home. Relying upon a provision in the contract requiring Plaintiff to inform Defendant "of any change in title, use or occupancy of the" insured property, (The Policy 3), Defendant argues that Plaintiff's purported breach rendered the contract void (or otherwise excused it from providing coverage for the fire). The Court disagrees.

The contract states that Defendant "*may* cancel this policy" if Plaintiff violates "any of the policy terms." (The Policy 4) (emphasis added). It does not state that such violation results in automatic rescission of the contract, nor does it state that violation of a policy term unrelated to the cause of loss is grounds for excluding coverage altogether. Rather, the "may cancel" language suggests that the policy is not automatically void upon breach. If Plaintiff violated the contract by failing to notify Defendant of a change in occupancy, Plaintiff was still entitled to notice of cancellation. Under Illinois law, the purpose of providing notice in the event of cancellation "is to make the insured aware that his or her policy is being terminated and to afford the insured time to obtain other insurance." Green v. J.C. Penney Auto Ins. Co., Inc., 722 F.2d 330, 332 (7th Cir.

1983) (applying Illinois law); see also Estate of Luster v. Allstate Ins. Co., 598 F.3d 903, 907–908 (7th Cir. 2010) (applying Indiana law). "It has also been stated that the purpose of the requirement is merely to forestall a retractive notice." Green, 722 F.2d at 332–33. Defendant is a sophisticated business—if its intent was to render its policy void in the event of *any* breach, it could have specified that in the contract. Rather, the only violation enumerated in the policy that would render it wholly void is where "it was obtained by misrepresentation, fraud, or concealment of material facts." (The Policy 5). There is no indication that Plaintiff knew that the mere presence of his son being alone in the home would constitute a breach of the contract; had he known, he deserved the opportunity to contest the cancellation or seek insurance from another company to avoid any lapse in coverage. Defendant cannot retroactively cancel the policy without providing notice of cancellation while avoiding liability.[1]

Alternatively, Defendant argues that the presence of Plaintiff's son alone in the home resulted in a "substantial change or increase in hazard," thus excusing it from coverage. But Defendant ignores the causal language preceding the exclusionary provision: "**We** do not cover loss . . . *caused by* . . . [a]ny substantial change or increase in hazard . . . ." (The Policy 6) (italics added). "Where the words of a policy are clear and unambiguous, they must be given their plain, ordinary meaning and be applied as written." Stonegate Ins. Co. v. Hongsermeier, 72 N.E.3d 869, 874 (Ill. App. Ct. 2017). Although Defendant argues that it may have increased Plaintiff's insurance premiums (or denied coverage altogether) had it known that Plaintiff's son was alone in the home, it does not allege that Plaintiff's son *caused* the fire. See Heuer v. N.W. Nat'l Ins. Co.,

---

[1] Plaintiff also argues in its briefs that the provision requiring notice in the event of any change in use or occupancy impermissibly provides less coverage than Illinois's Standard Fire Policy. (Pl.'s Mot. for Partial Summ. J. 4–7, ECF No. 28). But the Standard Fire Policy allows the insurer to "cancel the policy at any time"; it does not set forth situations where cancellation is improper. (Standard Fire Policy 2, ECF No. 28–4). Nevertheless, the Standard Fire Policy, like the policy at issue here, requires the insurer to provide written notice of cancellation before such cancellation will take effect. (Id.). Moreover, the Standard Fire Policy only renders the policy void where "the insured has *willfully* concealed or misrepresented any material fact or circumstance . . . ." (Id.) (emphasis added).

33 N.E. 411, 412 (Ill. 1893) ("It is a well-settled principle in the law of insurance that the proximate, and not the remote, cause of the loss must be regarded, in order to ascertain whether the loss is covered by the policy or not."). And while Defendant alleges that "[t]he fire started in Artis Jr.'s bedroom, and he has since been avoiding law enforcement," (Def.'s Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. 8, ECF No. 29), it also concedes that the cause of the fire was "undetermined," (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts 2), and no criminal arson charges are pending against Defendant's son. In short, Defendant does not contend that Defendant's son caused the fire, and it cannot rely on the increased-hazard exception to relieve it from liability.

Finally, the Court need not address whether Plaintiff's changed living arrangements constituted a change in occupancy of the home. The Complaint does not request declaratory relief, and, as discussed, whether Plaintiff violated this provision does not ultimately affect Defendant's liability on the contract.

### B. Taxable Costs Under § 155 of the Illinois Insurance Code

Section 155 of the Illinois Insurance Code provides an award of attorney fees and an addition penalty where an insurer's refusal or delay in payment of claims was vexatious and unreasonable. 215 ILL. COMP. STAT. 5/155 (West 2004). The purpose of the statute is "to make suits by policyholders economically feasible and punish insurance companies for misconduct." McGee v. State Farm Fire & Cas. Co., 734 N.E.2d 144, 151 (Ill. App. Ct. 2000). "An insurer is not liable for attorney's fees under section 155 merely because it litigated, and lost, the issue of insurance coverage." Mobil Oil Corp. v. Md. Cas. Co., 681 N.E.2d 552, 558 (Ill. App. Ct. 1997).

"An insurer's actions are not vexatious and unreasonable if: '(1) there is a there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a

legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law.'" TKK USA, Inc. v. Safety Nat'l Cas. Corp., 727 F.3d 782, 793 (7th Cir. 2019) (applying Illinois law) (quoting Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 200 F.3d 1102, 1110 (7th Cir. 2000) (applying Illinois law)). "A court should consider the totality of the circumstances when deciding whether an insurer's conduct was vexatious and unreasonable, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property." Statewide Ins. Co. v. Houston Gen. Ins. Co., 920 N.E.2d 611, 624 (Ill. App. Ct. 2009).

The Court disagrees with Plaintiff's contention that Defendant's refusal to provide coverage warrants recovery under § 155 because it "was predicated upon an unreasonable interpretation" of the policy. (Pl.'s Resp. to Def.'s Cross Motion for Summ. J. 15, ECF No. 33). Insurance companies are permitted to entertain a good-faith difference of opinion regarding policy coverage, even if their interpretations are ultimately incorrect. Here, Defendant reasonably argued that it was not required to provide coverage under the policy due to Plaintiff's purported breach. While the Court finds that argument unavailing, it was nonetheless based on a good-faith interpretation of the policy. Moreover, there is no indication that Defendant's attitude was malignant or lacked candor. Considering the totality of the circumstances, there was a bona fide dispute as to the application of insurance coverage, and Defendant's behavior was not the type of vexatious or unreasonable behavior that § 155 seeks to deter.

## IV. CONCLUSION

Plaintiff's Motion for Partial Summary Judgment is **GRANTED** with respect to Count 1 and **DENIED** with respect to Count 2, Defendant's Cross Motion for Summary Judgment is

**GRANTED** with respect to Count 2 and **DENIED** with respect to Count 1, and Plaintiff's Motion to Strike is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

**Dated: Monday, December 16, 2019**

**s/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
